CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
RKp
SEP 28 2007
JOHN F. CORCORAN, CLERK
BY: HMcDonaQ
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RODNEY E. TAYLOR, ) | |
|     Plaintiff, ) | Civil Action No. 7:07cv00448 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GARY CLORE, et al., ) | By: Hon. Jackson L. Kiser |
|     Defendants. ) | Senior United States District Judge |

Proceeding pro se, plaintiff Rodney E. Taylor, Virginia inmate number 334300, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, who is housed at the Patrick Henry Correctional Unit #28 ("PHCU") in Ridgeway, Virginia, alleges that the gang unit manager and other officials in the Virginia Department of Corrections ("VDOC") have improperly classified him as a gang member. In plaintiff's view, the classification is incorrect and, thus, violates his civil rights. He seeks "punitive damages for mental anguish, life endangerment, unfair and unusual treatment, and suffering of grief" and to have the classification expunged. Upon review of the record, I conclude that plaintiff has not stated a claim upon which relief can be granted and, therefore, will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

I.

The following facts have been adduced from plaintiff's complaint and submissions in support thereof. In August 2007, a gang unit manager for the VDOC examined plaintiff and determined that, based upon a tattoo on plaintiff's body and documents in plaintiff's possession, plaintiff was associated with the "Aryan Nation" gang. Plaintiff insists that this classification is erroneous, that he is a

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

Jehovah's Witness, and that his tattoo is not indicative of membership in a gang.[2] He states that the classification is "an abridgement of [his] civil rights, constitutionally protected, to fair and equal treatment."[3]

## II.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, slip op. at 8 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the

---

[2] Plaintiff submitted an informal complaint form and a regular grievance form regarding this dispute, in response to which he was informed that his classification arose under the Code of Virginia and is "non-grievable." Thereafter, plaintiff wrote letters to the VDOC's Inspector General and to the VDOC's Director, Gene M. Johnson, copies of which he has provided to the court.

Plaintiff's letter to Mr. Johnson reveals the following statements. Plaintiff stated that, on August 8, 2007, the gang unit manager initially cleared his tattoo of a black panther with wings as "'not gang related.'" Thereafter, the gang unit searched plaintiff's personal property, finding a "homemade headphone splitter" that the gang unit manager determined had been converted into tattooing equipment. On August 10, 2007, Captain Kanode at PHCU informed plaintiff that he would "be recieving [sic] a charge for 'gang related material and paraphernalia.'" Plaintiff complained to Mr. Johnson that "[t]here is nothing posted here to let inmates know what is considered to be gang related material." Plaintiff stated that he "had a drawing of a[n] iron cross (pencil) and a sketch of a skull (unfinished to be a tribute to Dale Jarrett 88) and a small cut out of a Germany-Nazi flag." He stated that he "also had WWII books and a cut out of a[n] Isreal [sic] flag. . . ." He maintained that he "read[s] and stud[ies] the WWII/holocaust because of what Hitler did to my people, Jehovah['s] Witnesses, as well as the Jews."

[3] Significantly, it appears that, based on plaintiff's submissions, plaintiff is scheduled for release in approximately eight months, and is not being paroled. Plaintiff does not allege that the gang member designation resulted in anything other than a notice or reprimand regarding his gang membership. He does not allege that the designation has caused any change in his eligibility for release, his inmate trustee status, work privileges, or any other privileges.

elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 18-24, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

Construing plaintiff's complaint liberally, he claims that his classification as a gang member violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Legislation is generally presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Schweiker v. Wilson, 450 U.S. 221, 230 (1981). But when a law adversely affects a "suspect class," such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the law will be sustained only if it is "suitably tailored to serve a compelling state interest." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985).

Here, the "rational-basis" test applies. Inmates are not a suspect class. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (citing Frontiero v. Richardson, 411 U.S. 677, 686 (1973); Plyler v. Doe, 457 U.S. 202, 216 (1982)).[4] Nor does plaintiff's claim involve the denial of a fundamental right, because

---

[4] The court further notes that the classification of inmates based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, thus it "is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993). "The only proper judicial inquiry is whether the [classification] serves a legitimate state [penological interest and whether the challenged classification is rationally related to it." Moss, 886 F.2d at 690. Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); see McGowan v. Maryland, 366 U.S. 420, 426 (1961) (noting that such classifications "will not be set aside if any state of facts reasonably may be conceived to
(continued...)

a prisoner does not have a constitutional right to be placed in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). The VDOC's classification of gang member inmates as gang members is rationally related to the legitimate state interest of maintaining order in the prison. See Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence"). Identifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct "targets a core threat to the safety of both prison inmates and officials." In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir.1999). The gang unit manager's classification of plaintiff is not aimed at a suspect class, nor does it invade a fundamental right. See City of Cleburne, 473 U.S. at 440. "[W]here individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued." Id. at 441-42.

To the extent plaintiff's complaint could be construed to include a claim that he was classified

---

⁴(...continued)
justify it"). Moreover, the burden rests on the one challenging the [classification] to disprove the existence of every conceivable basis which might support it." Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999) (internal quotation marks omitted). The reasons need not actually motivate the state's conduct or action; they need only reflect a set of facts reasonably conceived to justify the action. See id. at 274-75. Nor must the state "articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).

4

as a gang member without first having a hearing on the matter, plaintiff has not presented any authority to establish that prisoners are constitutionally entitled to a hearing prior to receiving a gang member designation.[5] Custodial classifications do not create a major disruption in a prisoner's environment, and a mere chance or probability that a single factor will affect a future parole decision is too attenuated to invoke the Due Process Clause. Sandin v. Connor, 515 U.S. 472, 486-87 (1995) (inmate confined to segregation for thirty days had no protected liberty interest at stake). In Sandin, the Supreme Court held that, in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. The Court recognized that states may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In order to show the deprivation of a liberty interest regarding custody classifications, such as the gang member classification at issue here, an inmate must show either that the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

---

[5] Insofar as plaintiff claims that the gang unit manager's evaluation of the tattoo is incorrect, an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to statute. See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984). While the United States Court of Appeals for the Fourth Circuit has held that "in certain limited circumstances" an inmate may have a right "to have prejudicial erroneous information expunged from [his] prison files," the inmate must allege that particular information in his files is false, and that such information was relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201-203 (4th Cir.1979). Additionally, an inmate seeking to bring such a claim must first demonstrate that he has requested relief from the relevant authority and that relief has been denied. Id. Plaintiff fails to show that, even if the information is false, it has been relied upon to a constitutionally significant degree, such as in a parole determination. (The court reiterates that it appears that plaintiff is not slated for parole, and that he is actually scheduled for release in approximately eight months. See supra n.3.) The most plaintiff alleges is that "[t]his information is available to law enforcement." And, given the recent dates of the gang member designation and the documents plaintiff presents in support of his claim, it is clear that plaintiff has not exhausted all available forms of relief from the state, such as an appeal to a parole board, were such body to make an adverse determination based on his gang member designation. Since none of these requirements have been met, plaintiff fails to state a claim under Paine v. Baker.

5

or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. Id. at 483-84.

Here, the classification as a gang member does not exceed plaintiff's sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Nor does an increase in security classification, such as plaintiff's being classified as a gang member, constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life, because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. See Moody, 429 U.S. at 88 n.9, (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"); Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); but see Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that transfer to a "supermax" prison "imposes an

6

atypical and significant hardship under any plausible baseline," id. at 223, because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio," id. at 214).[6]

I conclude that plaintiff's designation as a gang member fits well within the guidelines set out in the Jones and Sandin opinions. Therefore, any Equal Protection Clause and Due Process Clause claims plaintiff may have raised are without merit under § 1983, and must be dismissed, pursuant to § 1915A, for failure to state a claim upon which relief may be granted.

### III.

For the foregoing reasons, plaintiff's complaint will be dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.[7]

ENTER: This 28th day of September, 2007.

/s/ Jackson L. Kiser
Senior United States District Judge

---

[6] Plaintiff does not assert that state prison guidelines create a liberty interest triggering due process rights in the instant circumstances. In fact, plaintiff states, without any further specification, that the gang membership classification is mandated by the Code of Virginia. At any rate, the Supreme Court has made it clear "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). Even prior to the clarifications of Sandin and Wilkinson, however, it was clear that the Constitution does not vest in an inmate a liberty interest in retaining or receiving a certain custody or classification status. Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir.1994) (as long as the challenged conditions or degree of confinement is within the sentence imposed and is not otherwise violative of the Constitution, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints).

[7] The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).